## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**DREW M. MOIR, # M-48561,**

        **Plaintiff,**

        **vs.**                      **Case No. 17-cv-066-DRH**

**TIMOTHY J. AMDAHL,**
**DAVID W. RAINS,**
**JOHN BALDWIN,**
**RACHEL DODD,**
**MONICA CARRELL,**
**MICHELLE NEESE,**
**DEEDEE BROOKHART,**
**SCOTT REIS,**
**SHELLY JOHNSON,**
**DAVID SHEA,**
**C/O GEIER,**
**BYRLEY,**
**T. SCOTT KEEN,**
**and SHERRY BENTON,**

        **Defendants.**

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

Plaintiff, currently incarcerated at Robinson Correctional Center ("Robinson"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Among other claims, Plaintiff asserts that he was denied the opportunity to attend religious services, and was singled out for harassment on account of his race and religion. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A .

Under § 1915A, the Court is required to screen prisoner complaints to filter

out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.* At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Arnett v.*

*Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that some of Plaintiff's claims survive threshold review under § 1915A

## **The Complaint**

Plaintiff is white, and is a practicing member of the Al-Islam faith.  During the time period pertinent to this action, he attended Jumah services regularly.  Jumah services were held at Robinson every Friday at 1:00 p.m.  (Doc. 1, p. 8).

On Friday, December 18, 2015, at approximately 12:35 p.m., Plaintiff attempted to sign out of his housing unit (4B) to attend Jumah service.  Officer Amdahl told Plaintiff that he didn't know anything about the service and was not going to call to find out about it.  (Doc. 1, p. 4).  At approximately 1:05 p.m., Plaintiff went to the 4B control unit and asked Amdahl whether the Jumah service had been called; Amdahl responded that it had not.  Plaintiff requested Amdahl to call and find out why the Jumah line had not been called; Amdahl responded, "You shouldn't even have it, so I'm not calling."  *Id.*  Soon afterward, Plaintiff saw other inmates carrying prayer rugs proceeding to the gym.  Plaintiff returned to the 4B control area and asked Amdahl to call the gym because Plaintiff had seen other prisoners on their way there.  Officer Byrley stated that no Jumah line had been called.  Plaintiff was not permitted to attend Jumah service that day.

Plaintiff filed a grievance over this incident.  Several weeks later, Grievance Officer Dodd responded, saying that memos had gone out to inform "Operations"

of the regular Jumah schedule, and they are responsible to call all lines.  Amdahl told Dodd that each wing gets a call regarding Jumah lines, and they must not have received a call on December 18.  Plaintiff's grievance was denied, and the denial was affirmed by Keen (Administrative Review Board) and Baldwin (IDOC Director).  (Doc. 1, pp. 4-5).

The following Friday, December 25, 2015, Plaintiff asked a Lieutenant to make sure Jumah was called in House 4B as he did not want the same problem to recur.  The Jumah service was called that day in 4B, and Plaintiff attended.

Upon Plaintiff's return to his unit, Amdahl immediately shook him down "for no apparent or valid reason."  (Doc. 1, p. 5).  Following the shakedown, Plaintiff asked Amdahl to call in a crisis team; Amdahl refused.  Plaintiff asked for a grievance form and for Amdahl to call a superior officer.  Amdahl refused, and ordered Plaintiff to step into the wing, which Plaintiff did.  Amdahl then wrote a disciplinary report on Plaintiff.[1]  Plaintiff asked Amdahl for a crisis team two more times when Amdahl walked through the unit, but Amdahl ignored him. (Doc. 1, p. 6).  Plaintiff later filed a grievance over Amdahl's conduct, which was denied.  (Doc. 1-1, p. 8).  After Amdahl left due to a shift change, Plaintiff asked the new officer for a crisis team referral; this officer allowed Plaintiff to go to Operations to discuss the crisis.

About 3:00 p.m. on December 25, 2015, Plaintiff spoke with Officer Shea to address his crisis issue, and explained that he was being "harassed, intimidated,

---

[1] Plaintiff attaches a disciplinary summary showing that he was found guilty of possessing unauthorized property on December 25, 2015 (a catalog from the Islamic Book Store), and punished with a 14-day commissary restriction, based on a ticket written by Amdahl.  (Doc. 1-1, p. 24).

and discriminated against," and the problem "not only affect[ed] my life but also my eternity." (Doc. 1, p. 6). Shea responded that this was not a crisis; a crisis team should be used when someone dies. Shea asked whether Plaintiff liked it at Robinson, and then said he could send Plaintiff somewhere where there is no air conditioning, concluding, "Don't play with the crisis team." *Id.* Plaintiff responded that death is inevitable and shouldn't be a crisis, but hindering him from practicing his religion will affect him for eternity, and is very serious.

On January 9, 2016, Amdahl approached Plaintiff in the hallway of the unit, addressing him as "Hebrew – that's your name, isn't it?" (Doc. 1, p. 7). Plaintiff responded that his name was not "Hebrew." Amdahl took Plaintiff to the control area, and asked him if he knew another inmate across the hall named "Hebrew." Amdahl described the inmate's physical appearance; Plaintiff responded that he knew the person, but his name is not "Hebrew." Amdahl said this inmate wanted to speak to Plaintiff, and asked Officer Geier whether the inmate was on his housing wing (4A). Geier said he was there but was probably asleep, having just returned from work. Plaintiff returned to his own 4B wing. (Doc. 1, p. 8).

The inmate who was the subject of Amdahl's "Hebrew" inquiry was Bourey, who, like Plaintiff, was a white practicing member of the Al-Islam faith. Two days later, Plaintiff asked Bourey if he needed to speak with Plaintiff. Bourey said he did not, and that officers had also approached him, calling him "Hebrew" and told Bourey that Plaintiff wanted to speak to him. Neither Bourey nor Plaintiff had

asked an officer to relay a message to the other.  (Doc. 1, p. 9).  Plaintiff filed a grievance against Amdahl over this incident, which he viewed as harassment and an encouragement to break the rules against communicating with inmates on other housing wings.  (Doc. 1-1, pp. 10-11).

On January 12, 2016, when Plaintiff checked back into his wing after getting a haircut, Amdahl asked to inspect Plaintiff's hair.  (Doc. 1, p. 9).  Plaintiff asked why, and Amdahl replied, "To make sure it is safe."  *Id.*  Plaintiff questioned whether the officer at the barbershop had asked Amdahl to check his hair, because that officer had already made sure Plaintiff's hair complied with regulations.  Amdahl said, "No, I just want to see your hair."  *Id.*  Plaintiff filed a grievance over this incident.  (Doc. 1-1, pp. 15-16).   In Amdahl's response to the grievance, he claimed that he was speaking to another inmate about his hair, but Plaintiff says there was no other inmate present or returning to the unit at that time.  (Doc. 1, p. 10).

On January 22, 2016, Plaintiff again was not allowed to participate in the Friday Jumah service.  (Doc. 1, p. 10).  Plaintiff went to the dayroom at 12:30 p.m. to wait for the Jumah call.  Over the next 40 minutes, Amdahl called the lines for 3 other activities, but not Jumah.  At 1:10 p.m., Plaintiff asked Amdahl to call the gym to inquire about the Jumah line.  Amdahl claimed that he had called the Jumah line "a while ago;" but Plaintiff informed Amdahl he had been waiting ever since the dayroom opened.  *Id.*  Amdahl refused Plaintiff's request to be allowed to attend Jumah, and refused to call a Lieutenant.  Plaintiff followed

Amdahl's order to step back into the wing.

Soon after this discussion, Amdahl took Plaintiff back to the control area. No other officers were present, and Plaintiff asked if they could talk in front of other people.  Amdahl ignored this request, and locked the control room door. Amdahl, with an aggressive tone, asked Plaintiff if he had a problem with him (Amdahl).  (Doc. 1, p. 11).  Plaintiff said he had a problem with Amdahl denying him his religious rights and services.  Amdahl said, "If you have a problem then let's address it." *Id.*  Plaintiff, fearing violence, said they could not address anything because he would just get a ticket and nothing would be solved.  Amdahl responded, "That's right," then asked Plaintiff why it was always him missing Jumah.  *Id.* Plaintiff said, "I'm the only one who goes consistently, and you don't call the line." *Id.*  Amdahl told Plaintiff to go back to the wing and "keep [his] f***ing mouth shut or I'll have your ass walked to seg." *Id.*

Amdahl proceeded to write Plaintiff a disciplinary ticket, claiming that Plaintiff had used profanity and refused multiple orders to return to his wing. (Doc. 1-1, p. 27).  This ticket was expunged.  (Doc. 1, p. 11; Doc. 1-1, p. 28-29).

Based on these incidents, Plaintiff raises several claims under the First and Fourteenth Amendments.  (Doc. 1, pp. 12-13).  These include claims against Amdahl and Byrley for denial of access to religious services; claims against Amdahl and Geier for singling out Plaintiff for discrimination and harassment because of his religion and race; an equal protection claim against Shea; claims against Amdahl for lying and filing illegible documents; and claims against Rains,

Keen, Baldwin, Dodd, Carrell, Neese, Brookhart, Benton, Reis, and Johnson for failing to take action on his grievances and violating administrative procedures. Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages. (Doc. 1, p. 15).

## Merits Review Pursuant to 28 U.S.C. § 1915A

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

**Count 1:** First Amendment claim against Amdahl and Byrley, for preventing Plaintiff from attending Jumah services on two occasions (December 18, 2015, and January 22, 2016);

**Count 2:** Fourteenth Amendment discrimination/equal protection claim against Amdahl and Geier, for targeting Plaintiff for harassment and intimidation because of his race and religion;

**Count 3:** First Amendment retaliation claim against Amdahl, for filing an unsubstantiated disciplinary charge against Plaintiff and for harassing him, after Plaintiff complained and filed grievances against Amdahl for denying him access to religious services;

**Count 4:** Fourteenth Amendment equal protection claim against Shea, for threatening Plaintiff with a transfer after Plaintiff requested crisis team assistance;

**Count 5:** Claim against Amdahl for making false statements in responding to Plaintiff's grievances, and for filing illegible disciplinary charges;

**Count 6:**   Claims against Rains, Baldwin, Dodd, Carroll, Neese, Brookhart, Reis, Johnson, Keen, and Benton for mishandling Plaintiff's grievances and failing to comply with administrative rules regarding grievance processing.

Counts 1, 2, and 3 shall proceed for further review against Amdahl. However, Counts 4, 5, and 6 shall be dismissed for failure to state a claim upon which relief may be granted.

## Count 1 – Denial of Access to Religious Services

The Seventh Circuit recognized years ago that "while freedom to believe is absolute, the exercise of religion is not . . . ." *Childs v. Duckworth*, 705 F.2d 915, 920 (7th Cir. 1983), and "prison officials may legitimately impose certain restrictions on the practice of religion in prison . . ." where there is a compelling interest. *Id.* (citations omitted).  Legitimate penological interests include the preservation of security in prison, as well as economic concerns.  *See Ortiz v. Downey*, 561 F.3d 664, 669 (7th Cir. 2009).  When these concerns are raised as justifications by prison officials for their actions that restrict the practice of religion, the Court looks at four factors to determine whether the restriction is constitutional:

> (1) whether the restriction "is rationally related to a legitimate and neutral governmental objective"; (2) "whether there are alternative means of exercising the right that remain open to the inmate"; (3) "what impact an accommodation of the asserted right will have on guards and other inmates"; and (4) "whether there are obvious alternatives to the [restriction] that show that it is an exaggerated response to [penological] concerns."

*Id.* (citing *Lindell v. Frank*, 377 F.3d 655, 657 (7th Cir. 2004)).  *See also Turner v. Safley*, 482 U.S. 78 (1987).

In his Complaint, Plaintiff does not make a general challenge to prison regulations regarding access to Jumah services, nor does he complain that any particular regulation interfered with the free exercise of his beliefs.  To the contrary, the prison had a regular schedule allowing prisoners to attend Jumah service, with a protocol in place to authorize their movement from the housing areas to the gym where services were held.  Therefore, whether the prison has valid penological reasons for their regulations is not at issue.  Instead, Plaintiff complains that Amdahl purposely denied him access to the Jumah service.

Plaintiff asserts that on two occasions, Amdahl failed to call the line to authorize prisoners to leave his housing area in order to attend the Jumah service.  Each time, Amdahl denied Plaintiff's requests for permission to join other inmates at the service.  On December 18, 2015, Plaintiff alerted Amdahl in advance that he wished to attend the service, but Amdahl refused to check as to why the Jumah line had not been called, and refused to allow Plaintiff to go to the service even after other inmates were observed on their way there.  About a month later, on January 22, 2016, Amdahl again failed to call the Jumah line, and refused to allow Plaintiff to attend after he inquired.  At this stage of the case, Plaintiff has adequately pled a First Amendment claim against Amdahl for interfering with his practice of his religion, and **Count 1** shall proceed against this Defendant.

Plaintiff also seeks to impose liability on Byrley for his inability to attend these services.  However, his recitation of the facts indicates that Byrley did not appear to have authority to allow Plaintiff to leave his wing (4B), and was merely present in the control room on December 18 when Plaintiff questioned Amdahl about the Jumah line.  After Plaintiff had seen other inmates walking nearby with prayer rugs and asked Amdahl to call about the matter, Byerley stated that no Jumah line had been called.  This was the extent of Byerley's involvement in the matter.  While Byerley's comment might have supported Amdahl's decision to continue to deny Plaintiff's requests to call about the matter, Byerly had no duty to intervene on Plaintiff's behalf.  Byerly's presence and voluntary comment about the issue are not sufficient to hold him liable for Amdahl's actions on December 18.  Plaintiff's claim that Byerly lied when he said the line had not been called (Doc. 1, p. 13) does not alter this analysis.  Byerly shall therefore be dismissed from **Count 1** without prejudice.

### Count 2 – Discrimination/Equal Protection – Amdahl and Geier

A "prison administrative decision may give rise to an equal protection claim only if the plaintiff can establish that 'state officials had purposefully and intentionally discriminated against him.'"  *Meriwether v. Faulkner*, 821 F.2d 408, 415 n.7 (7th Cir.), *cert. denied*, 484 U.S. 935 (1987) (citing *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982)).  The Equal Protection Clause of the Fourteenth Amendment prohibits government discrimination against a person on the basis of characteristics such as race, national origin, or religious affiliation.

> The gravamen of equal protection lies not in the fact of deprivation of a right but in the invidious classification of persons aggrieved by the state's action.  A plaintiff must demonstrate intentional or purposeful discrimination to show an equal protection violation.  Discriminatory purpose, however, implies more than intent as volition or intent as awareness of consequences.  It implies that a decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effects on the identifiable group.

*Nabozny v. Podlesny*, 92 F.3d 446, 453-54 (7th Cir. 1996) (quoting *Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982)).

In Plaintiff's case, he claims that Amdahl purposely singled out himself and inmate Bourey, as the "only two white practicing members of Al-Islam in house 4," for harassment and intimidation.  (Doc. 1, p. 13).  Plaintiff's account indicates that Amdahl targeted him because he was a member of a racial minority within the group of inmates who followed the Al-Islam faith.

Amdahl's actions against Plaintiff taken due to his race and religious membership include his "shakedown" of Plaintiff on December 25 upon Plaintiff's return from Jumah service; the January 9, 2016, incident when Amdahl called Plaintiff "Hebrew" and encouraged Plaintiff and Bourey to break the rule against communicating with prisoners in other housing areas; Amdahl's insistence on checking Plaintiff's hair on January 12; and Amdahl's confrontation with Plaintiff on January 22 which led to the later-expunged disciplinary ticket.  Amdahl's refusal to allow Plaintiff to attend the two Jumah services described in Count 1 may also be considered under this Fourteenth Amendment claim.

Additionally, Plaintiff's equal protection claim may be considered as a "class-of-one" discrimination claim, in which a government actor arbitrarily and irrationally singles out an individual for adverse treatment.  *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Brunson v. Murray*, 843 F.3d 698, 705-08 (7th Cir. 2016); *Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012).  Plaintiff's Complaint suggests that he was treated differently from other similarly situated inmates, when Amdahl targeted him for the adverse actions described above.  Further, Amdahl's comments related by Plaintiff, and the pattern of actions he describes, indicate discriminatory animus toward him. At this stage, Plaintiff has sufficiently stated an equal protection claim against Amdahl in **Count 2** that survives review under § 1915A.

Plaintiff also includes Geier in the claim based on his involvement in the January 9, 2016, incident where Amdahl called Plaintiff "Hebrew" and claimed that inmate Bourey wanted to speak to Plaintiff.  Geier was in the control room and was in charge of the inmates on Bourey's wing, 4A.  According to Plaintiff's account, Geier merely answered Amdahl's question regarding whether inmate Bourey was present on the wing.  Plaintiff does not describe anything Geier did or said to "single out" Plaintiff for discriminatory treatment, or to harass him in any way.  (Doc. 1, pp. 7-8; 13).  Thus, Plaintiff fails to state a claim against Geier for subjecting him to discrimination or violating his right to equal protection.  Geier shall be dismissed without prejudice from this claim.

**Count 2** shall proceed only against Amdahl.

**Count 3 – Retaliation**

Plaintiff does not explicitly name a retaliation claim in the Complaint. However, Plaintiff's narrative suggests a possible First Amendment retaliation claim, and this claim shall be addressed in keeping with the Court's duty to liberally construe *pro se* pleadings.

Prison officials may not retaliate against inmates for filing grievances, exercising First Amendment rights, or otherwise complaining about their conditions of confinement. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (citation omitted).

Here, Plaintiff describes a series of events involving Amdahl, which prompted Plaintiff to file several grievances against him. Not only that, Plaintiff voiced his complaints over being denied access to Jumah services directly to Amdahl. When Amdahl searched Plaintiff on December 25, Plaintiff asked for a crisis team and asked Amdahl for a grievance form. Amdahl knew of Plaintiff's intent to file a complaint against him. Based on this chronology, it is plausible that Amdahl's subsequent harassment, hair inspection, and/or the unsubstantiated disciplinary charge of January 22, 2016, against Plaintiff were at

least partially motivated by Plaintiff's earlier complaints and/or grievances against Amdahl.

The issue in a retaliation claim is whether the plaintiff experienced an adverse action that would likely deter First Amendment activity in the future, and if the First Amendment activity was "at least a motivating factor" in the defendant's decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009). The January 22 disciplinary charge, as well as the other incidents of harassment, qualify as such adverse actions. Plaintiff's pleading states a plausible retaliation claim, therefore, **Count 3** against Amdahl shall also proceed for further consideration.

### Dismissal of Count 4 – Equal Protection – Shea

Plaintiff articulates his claim against Shea as a Fourteenth Amendment equal protection claim. He asserts that Shea violated his rights by telling Plaintiff that his problem with Amdahl was not a crisis, and then by threatening to transfer Plaintiff to a less-comfortable prison because he thought Plaintiff abused the crisis intervention process. However, Shea never subjected Plaintiff to a transfer or any other adverse action. The Complaint does not provide any factual support to suggest that Shea treated Plaintiff any differently from other inmates who called for a crisis intervention, thus there appears to be no basis for a claim of discrimination or violation of equal protection rights. Furthermore, Shea's expression of his opinion that Plaintiff did not have a legitimate "crisis" does not rise to the level of a constitutional violation.

Because Shea did not actually carry out his threat to move Plaintiff, and does not appear to have taken any adverse action against Plaintiff, there is no basis to recognize a retaliation or other claim against Shea.  **Count 4** against Shea shall be dismissed without prejudice for failure to state a claim upon which relief may be granted.

### Dismissal of Count 5 – False Statements and Illegible Documents

In this claim, Plaintiff complains that Amdahl violated his rights by lying on disciplinary reports and grievance responses, and that his illegibly-written disciplinary forms violated the regulations governing prison grievance procedures. Even if these claims are true, however, they do not amount to a constitutional violation.

Giving false statements on prison disciplinary and grievance documents simply does not violate Plaintiff's constitutional rights.  Further, the purported violation of prison regulations does not give rise to a claim cognizable in a federal civil rights action.  A federal court does not enforce state law and regulations. *Archie v. City of Racine*, 847 F.2d 1211, 1217 (7th Cir. 1988) (en banc), *cert. denied,* 489 U.S. 1065 (1989); *Pasiewicz v. Lake Cnty. Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001).

For these reasons, **Count 5** shall be dismissed from this action with prejudice, for failure to state a claim upon which relief may be granted.

### Dismissal of Count 6 – Grievance Processing

Finally, Plaintiff states that a number of Defendants who received his

grievances violated his Fourteenth and First Amendment rights by refusing to take any action on the grievances, particularly the complaints about being excluded from religious services.  He also faults Dodd, Keen, and Neece for running afoul of the grievance regulations by focusing on the relief Plaintiff requested in his grievances rather than addressing the issue that gave rise to the grievance.  Neither of these assertions states a claim upon which relief may be granted.

The Seventh Circuit instructs that the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011).  *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996).  "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli*, 81 F.3d at 1430.  The Constitution requires no procedure at all, and the failure of state prison officials to follow their own grievance procedures does not, of itself, violate the Constitution.  *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982).  And as discussed above under Count 5, the failure to follow a state regulation or administrative procedure does not give rise to a federal constitutional claim.

None of the Defendants named in connection with this claim (Rains, Baldwin, Dodd, Carroll, Neese, Brookhart, Reis, Johnson, Keen, and Benton) had any involvement whatsoever in Amdahl's refusal to allow Plaintiff to attend Jumah

services.  Nor did they take any part in Amdahl's alleged discriminatory actions. They only became aware of Plaintiff's complaints after the alleged unconstitutional actions had occurred.  Thus, these Defendants' denial of Plaintiff's grievances, failure to take action on the grievances, or any other action or inaction with regard to the grievance procedure will not support an independent constitutional claim.

**Count 6** shall also be dismissed from this action with prejudice for failure to state a claim upon which relief may be granted.

The above Defendants who allegedly mishandled Plaintiff's grievances shall be dismissed from the action.  However, because Plaintiff is seeking injunctive relief in connection with the counts which shall receive further review, Warden Rains (or the current Warden of Robinson) shall remain in the action, in his official capacity only.  *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (proper defendant in a claim for injunctive relief is the government official responsible for ensuring any injunctive relief is carried out).

## <u>Pending Motions</u>

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be referred to the United States Magistrate Judge for further consideration.

The motion for service of process at government expense (Doc. 4) shall be **GRANTED IN PART AND DENIED IN PART.**  Service shall be ordered below on those Defendants who remain in the action.  No service shall be made on the dismissed Defendants.

## Disposition

**COUNT 4** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.  **COUNTS 5 and 6** are **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted.

Defendants **BALDWIN, DODD, CARRELL, NEESE, BROOKHART, REIS, JOHNSON, SHEA, GEIER, BYRLEY, KEEN,** and **BENTON** are **DISMISSED** from this action without prejudice.  All claims against **RAINS** in his individual capacity are also dismissed without prejudice.

The Clerk of Court shall prepare for Defendants **AMDAHL** and **RAINS (in his official capacity as Warden of Robinson Correctional Center)**:  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known

address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to the United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of

the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

Signed this 24th day of March, 2017.

Digitally signed by
Judge David R. Herndon
Date: 2017.03.24
14:51:49 -05'00'

**United States District Judge**